O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NATHAN L. MAESTAS SR.,                    )    NO. EDCV 09-487-MAN
                                          )
              Plaintiff,                  )
                                          )    MEMORANDUM OPINION
         v.                               )
                                          )    AND ORDER
MICHAEL J. ASTRUE,                        )
Commissioner of the                       )
Social Security Administration,           )
                                          )
              Defendant.                  )
_____)

     Plaintiff filed a Complaint on March 12, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's applications for supplemental security income ("SSI") and
disability insurance benefits ("DIB"). On April 7, 2009, the parties
consented to proceed before the undersigned United States Magistrate
Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint
Stipulation on October 14, 2009, in which:  plaintiff seeks an order
reversing the Commissioner's decision and awarding benefits or,
alternatively, remanding the case for a new administrative hearing; and
defendant asks that the Commissioner's decision be affirmed.  The Court

has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed his applications for SSI and DIB on September 21, 2006, alleging an inability to work since September 15, 2004, due to mental impairments from psychotic disorders, depression, and high anxiety. (Administrative Record ("A.R.") 70, 60.)  His past relevant work ("PRW") includes:  diesel mechanic helper; crash chief and crash captain; work center supervisor; industrial truck operator; manager, airport; deliverer, merchandise; and construction worker II. (A.R. 34, 36.)

Plaintiff's DIB and SSI applications were denied initially on December 26, 2006, and upon reconsideration on May 8, 2007. (A.R. 70.) On June 10, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Mason D. Harrell, Jr. ("ALJ").  (A.R. 41-53.)  On July 11, 2008, the ALJ denied plaintiff's applications (A.R. 70-78), and the Appeals Counsel subsequently denied plaintiff's request for review of the ALJ's decision on February 3, 2009 (A.R. 1-3).  Plaintiff had a previous hearing based on the same disability claims before Administrative Law Judge Lowell Fortune ("ALJ Fortune"), who found that plaintiff was not disabled as defined under the Social Security Act from September 15, 2004, through the date of his decision on August 19, 2006.  (A.R. 62.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged disability onset date.  (A.R. 72.)

The ALJ determined that plaintiff has a combination of severe mental impairments consisting of psychotic disorder, not otherwise specified, mood disorder, not otherwise specified, and polysubstance dependence, which was in remission at the time of the hearing. (A.R. 72.)  The ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 73.)

The ALJ found that the testimony of both plaintiff and his mother was only credible to the extent it described the work plaintiff was capable of performing.  (A.R. 75.)  Both plaintiff and his mother admitted that plaintiff could perform household chores and yard work, go to doctor appointments, drive a car, and go out for social functions, such as seeing movies or going to church.  *Id.*  The ALJ found that the additional evidence and testimony provided by plaintiff and his mother was insufficient to overcome the presumption that plaintiff could work at the residual functional capacity ("RFC") level previously determined by ALJ Fortune.  (A.R. 76, 62.)

The ALJ found that plaintiff had the RFC to perform work at any exertional level with the following non-exertional limitations. Plaintiff:  can perform simple repetitive tasks consisting of object

3

oriented work; can have occasional non-personal contact with coworkers and supervisors, but should remain precluded from working with the public or having responsibility for the safety of others; and should not operate heavy machinery or potentially dangerous equipment. (A.R. 74.)

The ALJ found that plaintiff had PRW as a construction site cleaner and remains capable of performing that work. (A.R. 77.) The ALJ thus concluded that plaintiff has not been under a disability, as defined by the Social Security Act, from September 15, 2004, through the date of the ALJ's decision. (*Id.*)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that

detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005.   However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.   The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues:  (1) whether the ALJ properly considered the type, dosage, and side effects of plaintiff's prescribed medications; (2) whether the ALJ properly considered the mental and physical demands of plaintiff's PRW; and (3) whether the ALJ properly considered the lay witness statement of plaintiff's mother. (Joint Stipulation ("Joint Stip.") at 3.)   Defendant asserts that the

5

ALJ's decision is proper and emphasizes that ALJ Fortune previously determined that plaintiff was not disabled as of August 19, 2006, thus creating a presumption of continuing nondisability after that date. (Joint Stip. at 5.)  The Court will address the three issues raised by plaintiff after first addressing the impact of ALJ Fortune's August 19, 2006 decision.

I.   **The Previous Decision By ALJ Fortune Creates A Presumption Of Nondisability, Which Plaintiff Must Rebut In Order To Be Found Disabled.**

Although applied less rigidly to administrative than to judicial proceedings, principles of *res judicata* nevertheless apply to administrative decisions. *See* Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Lyle v. Sec'y of Health and Human Servs., 700 F.2d 566, 568 (9th Cir. 1983).  A final determination that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of the prior administrative decision. *See* Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Lyle, 700 F.2d at 568. This presumption of continuing non-disability may be overcome by a showing of "changed circumstances." *See* Lester, 81 F.3d at 827; Chavez, 844 F.2d at 693.

If a claimant does not meet his burden to adduce "proof of change" in his medical condition or other "changed circumstances," such as a new medically-determinable impairment, an increase in the severity of an existing impairment, or a change in his age category, the Commissioner

is not obliged to make a de novo determination of non-disability, even when the burden of establishing disability otherwise would fall to the Commissioner. *See* <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1379-80 (9th Cir. 1984)(holding that the burden to prove disability remained with the claimant and did not shift to the Commissioner at step five, as it normally does, because the unappealed denial of the claimant's earlier application created a presumption of non-disability that must be overcome by the claimant's showing of changed circumstances, and where the ALJ permissibly concluded the claimant had produced no reliable medical evidence that he was disabled, the claimant had not met that burden); <u>Lyle</u>, 700 F.2d at 568-569 (holding that when the second administrative law judge properly determined the claimant had presented no evidence of changed circumstances to overcome the presumption that his ability to do light work persisted, the "absence of proof of change" was enough to meet the Secretary's burden to show the claimant could perform alternative work; the Secretary was not required "again [to] meet his burden de novo").

In the present case, plaintiff had a previous hearing before ALJ Fortune on the same claims of disability as those addressed in the ALJ decision now before this Court for review. In his 2006 decision, ALJ Fortune found that plaintiff suffered from "severe" impairments of psychotic disorder, not otherwise specified, mood disorder, not otherwise specified, and polysubstance dependence, in remission. (A.R. 59.) ALJ Fortune expressly addressed the opinions of plaintiff's treating physician, the consultative examining physicians requested by the State Agency, and the testifying medical expert. (A.R. 60-62.) ALJ Fortune ultimately concluded that plaintiff was capable of performing

his PRW and, thus, was not disabled from September 15, 2004, through the date of the decision on August 19, 2006. (A.R. 62.) The Appeals Council denied review of ALJ Fortune's decision (A.R. 70), and plaintiff did not seek judicial review. Accordingly, ALJ Fortune's decision became the final decision of the Commissioner and created a rebuttable presumption of continuing non-disability.

Nowhere in the Joint Stipulation does plaintiff offer evidence of changed circumstances or that his condition has worsened since ALJ Fortune's 2006 decision. Plaintiff's treating physician noted that plaintiff was responding well to medications, and he observed that plaintiff was "stable with meds" and "feeling well." (A.R. 201, 202, 226, 227, 233, 234, 235.) Just as ALJ Fortune found in his 2006 decision, the ALJ found that: "[i]n activities of daily living, . . . claimant has mild restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced one episode of decompensation."[1] (A.R. 73; *see also* A.R. 59-60.) The ALJ accordingly adopted the RFC determined by ALJ Fortune. (A.R. 77.) The ALJ specifically noted that plaintiff was found not disabled by ALJ Fortune,

---

[1]   In his 2006 decision, ALJ Fortune found that plaintiff suffered one episode of decompensation on September 15, 2004, as identified by the testifying medical expert Dr. Glassmire. (A.R. 29, 61.) In the decision before this Court for review, the ALJ identified an instance of intervention, in February 2006, when plaintiff was treated on an out-patient basis; this episode falls outside the claimed disability period. (A.R. 76, 204-06.) The ALJ also acknowledged plaintiff's claim that he suffered a separate episode of decompensation in or about June 2007, following the cessation of his Risperdal prescription in April 2007, and that he felt better as of August 2007, after he resumed taking Risperdal and started taking Depakote. (A.R. 46-47, 50, 73, 75.)

and since that time, plaintiff has submitted minimal and routine treatment notes, which were insufficient to overcome the presumption of unchanged circumstances.  (A.R. 76.)

Accordingly, ALJ Fortune's findings regarding plaintiff's disability are entitled to *res judicata* effect.  *See* A.R. 76; <u>Chavez</u>, 844 F.2d.

**II.  The ALJ Properly Considered The Type, Dosage, And Side Effects Of Plaintiff's Prescribed Medications.**

Pursuant to SSR 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  However, an ALJ need only consider those medication side effects that have a "'significant impact on an individual's ability to work.'"  <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993)(*citation omitted*).  The "claimant bears the burden of proving that a medication's side effects are disabling." <u>Short v. Astrue</u>, 648 F. Supp. 2d 1185, 1191 (C.D. Cal. 2009); *see also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002)(rejecting claim that administrative law judge improperly excluded the side effects of medication, because there was no objective evidence that the claimant's medications caused the side effects she alleged and her testimony in this respect properly was found not credible); <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985)(rejecting challenge to administrative law judge's finding that claimant's medications did not preclude him from working, when claimant did not produce any "clinical evidence showing that narcotics use impaired his ability to work," and thus, he did not

meet his burden of proving that his claimed impairment was disabling).

Plaintiff contends that the ALJ failed to properly take into consideration the type, dosage, and side effects of prescribed medications. (Joint Stip. at 4.) During the proceedings before the Commissioner, however, plaintiff failed to list or discuss any medication side effects that would affect his ability to work, whether in his disability reports, his hearing testimony, or the Joint Stipulation. (A.R. 2-26, 29-31, 43-53, 148, 171, 196.) In fact, when plaintiff listed his medications in his disability reports, he repeatedly indicated "none" when asked to state whether his medications caused him any side effects. (A.R. 148, 171, 196.) Additionally, with the exception of one notation of dry mouth and difficulty in swallowing due to a medication that was then discontinued (A.R. 203), plaintiff's treating physician repeatedly reported that plaintiff did not have side effects from his medications and was "feeling well." (A.R. 201, 202, 226, 227, 233, 234, 235.) Given that plaintiff, while this case was pending before the Commissioner, not only did not claim to suffer from medication side effects but expressly represented that he *did not* suffer any side effects, the ALJ did not err by failing to mention any issue regarding side effects from plaintiff's medications. *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2000)(no error found in administrative law judge's reliance on hypothetical to vocational expert that omitted medication side effects when the medical records did not contain any evidence of side effects "severe enough to interfere with [the claimant's] ability to work" and the only side effects indicated by the claimant at the hearing were dozing off and dry mouth).

10

1    Plaintiff now proffers a *post hoc* argument premised on four

2    adjustments to his medications.   Plaintiff asserts that, because his

3    medications twice were increased and twice were decreased, the ALJ

4    should have found that plaintiff suffered four episodes of

5    decompensation.[2] (Joint Stip. at 3.)   Specifically, plaintiff asserts

6    that four separate episodes of decompensation can be inferred from the

7    following changes made to his medications:   (1) change in Risperdal

8    dosage from 2 mg to 3 mg on July 6, 2006 (A.R. 207-208); (2) change in

9    Wellbutrin dosage from 150 mg to 200 mg on February 2, 2006 (A.R. 208);

10   (3) change in Risperdal dosage from 3 mg to 2 mg on February 12, 2007

11   (A.R. 228); and (4) a purported increase in plaintiff's Depakote dosage

12   on September 5, 2007 (A.R. 236).   Plaintiff asserts that each of these

13   alterations in his medication "can be considered episodes of

14   decompensation." (Joint Stip at 3.)

15

16   As noted above, to rebut the presumption of nondisability created

17   by ALJ Fortune's decision, plaintiff must demonstrate "changed

18   circumstances" since the previous decision.   *See* <u>Lester</u>, 81 F.3d at 827;

19   <u>Chavez</u>, 844 F.2d at 693.   Plaintiff's assertion that the above-noted

20   asserted changes in his medication establish four episodes of

21   decompensation that rebut the presumption is wholly unpersuasive.   As a

22   threshold matter, two of the four claimed "episodes of decompensation"

23   -- resting on the February and July 2006 alterations in medication --

24   occurred:   *before* ALJ Fortune issued his decision and within the time

25   ─────────────────

26   [2]    The Code of Federal Regulations defines a period of decompensation
     as "exacerbations or temporary increases in symptoms or signs
     accompanied by a loss of adaptive functioning, as manifested by
27   difficulties in performing activities of daily living, maintaining
     social relationships, or maintaining concentration, persistence, or
28   pace." 20 C.F.R. § 404, Subpt. P, App. 1, 12.00(C)(4).

frame adjudicated by ALJ Fortune, who found that plaintiff was not disabled through August 19, 2006; and predate the closed period of disability in issue here, *i.e.,* August 19, 2006, through October 2007. Thus, these two medication adjustments have no bearing on the validity of the ALJ's decision.

Of the two remaining alterations to plaintiff's medications, one involved a *decrease* in plaintiff's medication on February 12, 2007; plaintiff's treating physician specifically noted that plaintiff was "feeling well" with his current medications on that date. (A.R. 226.) The record, thus, flatly refutes any inference that the alteration of medication on that date evidences an episode of decompensation.

With respect to the remaining instance, a September 5, 2007 prescription cited by plaintiff, plaintiff testified that: he last had an episode of decompensation approximately one month after his physician took him off Risperdal in April 2007[3]; his physician put him back on Risperdal, which caused an improvement; and because he wasn't fully improved as of August 2007, she added a Depakote prescription, initially for 500 milligrams, which then was increased to 1,000 milligrams. (A.R. 46-47, 50.)  The medical record on which plaintiff now relies (A.R. 236) shows, however, that plaintiff was prescribed 500 mg. of Depakote on July 11, 2007, and was prescribed the *same* dosage again on September 5, 2007, October 31, 2007, April 2, 2007, March 11, 2008, and May 5, 2008. In short, the record does not support plaintiff's assertion of a "significant alteration" in his Depakote prescription on September 5,

_____

[3]   Plaintiff's testimony was inconsistent regarding whether this "breakdown" occurred in May or June 2007. (A.R. 46, 50.)

2007. (Joint Stip. at 3.) In any event, even if there had been such a medication change, the ALJ expressly acknowledged plaintiff's testimony regarding the above-noted episode of decompensation following the discontinuance of his Risperdal prescription and the subsequent resumption of Risperdal and addition of Depakote to his medication regimen. (A.R. 73, 75.) The ALJ committed no error in this respect.

Plaintiff has proffered no basis for finding that the ALJ erred in connection with his consideration of any "side effects" of plaintiff's medications and/or episodes of decompensation. There are no reported instances of record relevant to the closed period in issue, aside from the 2007 incident described by plaintiff and accepted by the ALJ, in which plaintiff experienced an exacerbation or increase in symptoms accompanied with a loss of adaptive functioning during the claimed disability period. Accordingly, the ALJ did not, as plaintiff contends, fail to consider properly the type, dosage, and side effects of plaintiff's medications.

**III. Reversal Is Not Warranted Based On The ALJ's Finding That Plaintiff Can Perform His Past Relevant Work.**

Unless a claimant's prior work constituted "substantial gainful activity," the work cannot qualify as "past relevant work." *See* 20 C.F.R. § 416.965(a); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1051 (9th Cir. 2001). At step four, a claimant bears the burden of showing that he does not have the residual functional capacity to engage in any of his PRW. 20 C.F.R. §§ 404.1520(e), 416.920(e). Generally, a vocational expert's opinion regarding a claimant's ability to perform his PRW,

13

without specifying whether such finding is based on the claimant's ability to perform his actual prior job or the prior job as it is generally performed, is sufficient for a step four finding. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001)("[w]e have never required explicit findings at step four regarding a claimant's PRW both as generally performed and as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations")(citations omitted).

Plaintiff contends that the ALJ's holding that plaintiff's RFC does not preclude him from performing PRW as a construction site cleaner does not adequately discuss the mental and physical demands of the PRW as required by Social Security Ruling ("SSR") 82-62.  (Joint Stip. at 8.)

In plaintiff's prior hearing before ALJ Fortune, a vocational expert was employed to identify the specific physical and mental demands of plaintiff's PRW in construction site cleanup.  (A.R. 36.)  In response to ALJ Fortune's hypothetical concerning plaintiff's RFC and PRW, the vocational expert stated that plaintiff could perform construction site cleanup work, and ALJ Fortune found, therefore, that plaintiff could  perform his past relevant work even with his mental impairments.  (A.R. 37, 62.)  Since that hearing and decision, plaintiff has submitted minimal and routine treatment notes that do not overcome the presumption of unchanged circumstances.  (A.R. 76.)  The ALJ found that "[t]here has been no material change in the claimant's condition since August 19, 2006."  Id.  Plaintiff does not contend that his PRW has changed from what ALJ Fortune has already considered and, thus, would require a de novo determination of non-disability.  See Booz, 734

14

1  F.2d at 1379-80.  Rather, plaintiff contends only that "the ALJ failed

2  to discuss any of the actual physical and mental demands of plaintiff's

3  past relevant work."  (Joint Stip. At 9.)

4

5       Plaintiff's contention falls under the penumbra of harmless error.

6  See Robbins, 466 F.3d at 885.  The ALJ failed to directly discuss the

7  demands of plaintiff's PRW when finding whether or not plaintiff could

8  perform his PRW in light of the determined RFC.  Id.  The ALJ did,

9  however, consider the entire record when making his findings.  (A.R.

10  72.)  The record includes the testimony of the vocational expert in

11  plaintiff's previous hearing before ALJ Fortune.  See A.R. 32-38.  That

12  vocational expert did consider and discuss the exertional skill level

13  and the specific vocational preparation level for all of plaintiff's

14  PRW.  See A.R. 34-36.  Plaintiff has not alleged, nor does the record

15  indicate, that plaintiff's PRW has changed since the previous decision.

16  In view of the record, and noting specifically the testimony of the

17  vocational expert in plaintiff's previous hearing, the ALJ's error is,

18  in fact, harmless and "inconsequential to the ultimate nondisability

19  determination." Robbins, 466 F.3d at 885.  accordingly, reversal is not

20  warranted based on plaintiff's second contention.

21

22  **IV.  The ALJ Properly Considered And Partially Rejected The Lay Witness**

23      **Statement Of Plaintiff's Mother.**

24

25       Plaintiff contends that the ALJ failed to properly take into

26  consideration the lay witness testimony of plaintiff's mother, Frances

27  Maestas. (Joint Stip. at 11.)  With respect to such testimony, the ALJ

28  found that:

> [T]he claimant's mother is only credible to the extent the
> claimant can do the work described herein.   The statements
> made by the claimant's mother have not been given under oath.
> She is not a medical professional and as a lay witness the
> claimant's mother is not competent to make a diagnosis or
> argue the severity of the claimant's symptoms in relationship
> to his work.   The claimant's mother is the sole support for
> the claimant and therefore she has a financial interest in
> seeing claimant receive benefits.   Therefore her opinion is
> not an unbiased one.   Most importantly, her statements are not
> supported by the clinical or diagnostic evidence that is
> discussed more thoroughly below.

(A.R. at 75.)

Plaintiff contends that Ms. Maestas did provide competent evidence in her testimony regarding the symptoms of plaintiff's impairment as she observed them, such as plaintiff's asserted inability to drive due to his slow reactions and/or his problems with concentration and memory. (Joint Stip. at 11.)   Plaintiff contends that the ALJ's decision to discredit the testimony of Ms. Maestas was therefore legally insufficient.   (Joint Stip. at 12.)

"Lay testimony as to a claimant's *symptoms* is competent evidence that an ALJ *must* take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); *see also* Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996);

16

1  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may
2  "properly discount lay testimony that conflict[s] with the available
3  medical evidence" (Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.
4  1984)), particularly where, as in Vincent, "lay witnesses [are] making
5  medical *diagnoses*," because "[s]uch medical diagnoses are beyond the
6  competence of lay witnesses and therefore do not constitute competent
7  evidence" (Nguyen, 100 F.3d at 1467; original emphasis). When, however,
8  a lay witness testifies about a claimant's *symptoms*, which may affect
9  the claimant's ability to work, such testimony *is* competent evidence
10 and, therefore, cannot be disregarded without comment. *Id*. When an ALJ
11 fails to discuss competent lay testimony, a reviewing court cannot find
12 harmless error "unless it can confidently conclude that no reasonable
13 ALJ, when fully crediting the testimony, could have reached a different
14 disability determination." Stout, 454 F.3d at 1056.

15

16      In her first third party function report, dated October 16, 2006,
17 Ms. Maestas stated that plaintiff was able to go out alone, visit family
18 members, go to church, perform household chores, prepare his own meals,
19 watch TV, drive a car, and walk for approximately five blocks before
20 needing to rest.  (A.R. 158-163.)  She also stated that plaintiff
21 suffered from some concentration problems, as "sometimes he doesn't
22 notice details on TV programs." (A.R. 163.)  All of these statements
23 are in line with plaintiff's own adult function report. (*See* A.R. 151-
24 157.)  In her second third party function report, dated March 16, 2007,
25 Ms. Maestas stated that plaintiff could still go out alone and perform
26 household chores.  (A.R. 183-190.)  She also stated that plaintiff had
27 trouble with his concentration and memory and was unable to drive a car
28 due to slow reactions.  (A.R. 186, 188.)  She asserted that plaintiff's

17

1   medication made him sleepy.  (A.R. 184.)  She also stated that plaintiff
2   had problems with concentration, memory, and the ability to follow
3   instructions, as evidenced by not remembering details in TV shows and
4   needing some instructions repeated.  (A.R. 188.)
5
6        Many of the observations made by the Ms. Maestas are contradicted
7   by the record.   Though she asserts that plaintiff gets sleepy as a
8   result of taking his medication, neither plaintiff nor his treating
9   physician noted that plaintiff suffered from this side effect as a
10  result of his medications.  (A.R. 148, 171, 196, 201, 202, 226, 227,
11  233, 234, 235.)  Despite her assertion that plaintiff cannot drive due
12  to his slow reaction speed, neither the physicians who saw plaintiff nor
13  plaintiff himself indicate that he suffered from slow reactions.  *(See*
14  A.R. 150-157, 175-182, 200-236.)  Plaintiff gave a conflicting reason
15  for being unable to drive a car, stating that his "driving privelage
16  [sic] [was] taken away due to [his] owing child support."  (A.R. 178.)
17  As stated by the ALJ in his finding, the testimony of the Ms. Maestas is
18  inconsistent with the medical record concerning plaintiff suffering from
19  slowed reactions.  (A.R. 75.)
20
21       Moreover, by the time of Ms. Maestas's March 16, 2007 third party
22  function report, plaintiff's treating physician, Dr. Mejia, noted
23  repeatedly that plaintiff's was doing well on medication, and his
24  concentration and memory were "regular" or "fine."  (A.R. 201, 226, 227,
25  234, 235.)  After fully crediting the additional evidence supplied by
26  plaintiff, the ALJ found that "the claimant has failed to present
27  evidence to overcome the presumption of [un]changed [sic]
28  circumstances," and thus, the ALJ "considered and adopted the prior

18

residual functional capacity as it consistent with the current evidence of record." (A.R. 76, 77.)

Ms. Maestas's statements about Plaintiff's problems with concentration and memory, difficulty in following instructions, etc. are essentially cumulative of the medical testimony accepted by the ALJ and reflected in his RFC finding that Plaintiff is limited to simple, repetitive tasks with no public contact and minimal contact with supervisors and co-workers. There is no reason to believe that, had the ALJ expressly acknowledged and discussed Ms. Maestas's statements in this respect, he would have reached a different RFC finding or found any additional impairment at step two[4] of the five step disability evaluation process. Thus, the probative value of Ms. Maestas's statements is questionable.

Under these circumstances, the Court can confidently conclude that no reasonable ALJ considering this case would have reached a different conclusion had he or she expressly considered and addressed Ms. Maestas's statements set forth in the third party function report. Accordingly, the ALJ's decision to reject the lay witness testimony of Ms. Maestas, if erroneous at all, was harmless error. Stout, 454 F.3d at 1056.

///

///

///

---

[4]   Plaintiff does not claim to have any additional impairments that should have been found severe at step two.

19

1
2

**CONCLUSION**

3       For all of the foregoing reasons, the Court finds that neither
4   reversal of the ALJ's decision nor remand is warranted.  Accordingly, IT
5   IS ORDERED that Judgment shall be entered affirming the decision of the
6   Commissioner of the Social Security Administration and dismissing this
7   case with prejudice.

8

9       IT IS FURTHER ORDERED that the Clerk of the Court shall serve
10  copies of this Memorandum Opinion and Order and the Judgment on counsel
11  for Plaintiff and for Defendant.

12

13      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

14

15  DATED: August 10, 2010
16                                      _Margaret A. Nagle_
17                                      ─────────────────────────
                                        MARGARET A. NAGLE
                                        UNITED STATES MAGISTRATE JUDGE
18
19
20
21
22
23
24
25
26
27
28